**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JEFF D., PAULA E., JOHN M., AND
DUSTY R., by and though their
next friend, HOWARD A.
BELODOFF,* individually and on
behalf of all others similarly
situated,

> *Plaintiffs-Appellants,*

> v.

CLEMENT LEROY OTTER,*
individually and in his official
capacity as Governor of the State
of Idaho; TOM LUNA,* individually
and in his official capacity as
Superintendent of Public
Instruction of the Idaho State
Department of Education; RICHARD
ARMSTRONG,* individually and in
his capacity as Director of the
Idaho Department of Health and
Welfare; and SHARON
HARRIGFELD,*

---

*HOWARD A. BELODOFF is substituted for his predecessor Charles John-
son, next friend; CLEMENT LEROY OTTER is substituted for his predecessor
Dirk Kempthorne, Governor of the State of Idaho; TOM LUNA is substi-
tuted for his predecessor Jerry Evans, Superintendent of Public Instruction
of the Idaho State Department of Education; RICHARD ARMSTRONG is sub-
stituted for his predecessor Karl Kurtz, Director of the Idaho Department
of Health and Welfare, and SHARON HARRIGFELD is substituted for her pre-
decessor Brent Reinke, Director of the Department of Juvenile Correc-
tions, pursuant to Fed. R. App. P. 43(c)(2).

6839

individually and in her official
capacity as Director of the Idaho
Department of Juvenile
Corrections,
          *Defendants-Appellees.*

No. 07-36009

D.C. No.
CV-80-04091-BLW

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted
August 6, 2010—Seattle, Washington

Filed May 25, 2011

Before: William C. Canby, Jr., John T. Noonan, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Canby

**COUNSEL**

Howard A. Belodoff, Boise, Idaho, for the plaintiffs-appellants.

Michael S. Gilmore; James D. Carlson; Deputy Attorneys General, Boise, Idaho, for the defendants-appellees.

**OPINION**

CANBY, Senior Circuit Judge:

The Plaintiffs, a class of indigent children who suffer from severe emotional and mental disabilities, commenced this action against Idaho state officials more than three decades ago, alleging that the officials were providing them with inadequate care in violation of their constitutional and statutory rights. In the ensuing years, the parties reached agreements intended to remedy deficiencies in care, and those agreements were embodied in three consent decrees entered and monitored by the district court.

After a number of disputes had resulted in no less than four

appeals to this court,[1] the district court in 2006 held a "final compliance hearing" to determine whether the Defendants were in compliance with the terms of the decrees. The court determined that compliance would be measured by the Defendants' success in addressing Action Items that had been specified in an Implementation Plan that resulted from the third consent decree. Because the court viewed civil contempt as the only effective method of enforcing the consent decrees, it placed the burden on the Plaintiffs of establishing noncompliance by clear and convincing evidence. At the conclusion of the hearing, the district court found that the Defendants were not in compliance with respect to several of the Action Items, but that they had substantially complied with the majority of the Items. The court ordered the Defendants to take all steps necessary to bring themselves into substantial compliance with the Action Items for which they were in default, after which they could move to vacate the decrees. The Defendants took the steps that they deemed necessary and moved to vacate the decrees. In 2007, the district court found that the Defendants had substantially complied with the remaining Action Items, and it issued an order vacating the consent decrees.

The Plaintiffs appeal the order, asserting that it was error for the district court to apply the standard for civil contempt in determining whether to vacate the decrees. In applying that standard, the court required the Plaintiffs to prove by clear and convincing evidence that the Defendants had violated the terms of the decrees and that they had not done so in good faith or on the basis of a reasonable interpretation of the decrees. To be entitled to an order vacating consent decrees under Federal Rule of Civil Procedure 60(b), however, the Defendants are required to sustain the burden of establishing

---

[1]*See Jeff D. v. Kempthorne (Jeff D. IV)*, 365 F.3d 844 (9th Cir. 2004); *Jeff D. v. Andrus (Jeff D. III)*, 899 F.2d 753 (9th Cir. 1990) (amended opinion); *Jeff D. v. Andrus*, 861 F.2d 591 (9th Cir. 1988); *Jeff D. v. Evans*, 743 F.2d 648 (9th Cir. 1984), rev'd, 475 U.S. 717 (1986).

that they have substantially complied with the decrees or that facts or law have changed so that "it is no longer equitable that the judgment should have prospective application." *Jeff D. v. Kempthorne* ("*Jeff D. IV*"), 365 F.3d 844, 851 (quoting Rule 60(b)(5) as then phrased). The district court's application of the contempt standard with the imposition of the burden of proof on the Plaintiffs accordingly was error. In addition, we conclude that the district court erred in accepting the Action Items as the entire measure of compliance with the consent decrees. We accordingly reverse the order of the district court.

The Plaintiffs further contend that the district court committed errors of fact and law in issuing protective orders barring them from taking supplemental depositions of Appellee Karl Kurtz and two non-parties. Finding no such errors, we affirm those rulings of the district court.

## BACKGROUND AND PROCEDURAL HISTORY

In August 1980, Appellant Jeff D., on behalf of a class of indigent Idaho children suffering from severe emotional and mental disabilities, commenced this action against the Governor of Idaho and other state officials, alleging that the officials were providing them with inadequate care in violation of their rights under the United States Constitution, the Idaho Constitution, and federal and state statutes.[2] The complaint sought only declaratory and injunctive relief.

In 1983, the parties entered into a settlement agreement that offered virtually all of the injunctive relief the class members

---

[2]We refer to the state officials collectively as the "Defendants." Individual Defendants are identified by name or title. In addition to the Governor, the primary defendants are the Director of the Department of Health and Welfare, named as a defendant from the outset, and the Director of the Department of Juvenile Corrections, who was added as a defendant later in the proceedings.

sought. The agreement provided for continuing jurisdiction by the district court for five years "or until [the district court was] satisfied by stipulation or otherwise that the claims as alleged in the Complaint have been adequately addressed." The district court entered the agreement as a consent decree in April 1983.

By the late 1980s, after years of inaction on the part of the Defendants, the Plaintiffs filed a motion to enforce the decree. The parties again negotiated a settlement and eventually stipulated to a supplemental agreement, which the district court entered as a second consent decree in December 1990. The following seven years witnessed additional charges of non-compliance, admissions of failure, court intervention, outside auditing, compliance reviews, and finally, in March 1998, a motion by the Plaintiffs for a finding of contempt against the Defendants based on the negative findings of the most recent compliance review. The motion, however, resulted not in a formal determination by the district court but in a "compliance agreement" that purported to "reach a full and final settlement of the Motion for Contempt." In December 1998, the district court entered the agreement as a third consent decree.

For our purposes, the most significant aspect of the compliance agreement was the requirement that the Defendants provide to the Plaintiffs an independently produced "Needs Assessment" and compliance plan. Two years later, after no more headway than a motion to dismiss, another motion for contempt, and an appeal, the district court "determined that it must take a more active role in enforcing the Decrees."

The first step taken by the district court was to order the parties jointly to develop a new compliance plan providing "a comprehensive blueprint of how the defendants would meet the requirements of the decrees." The parties submitted a proposed plan in February 2001. After briefing and argument, the court issued a memorandum decision adopting the plan, which became known as the "Implementation Plan."

The Implementation Plan comprises a foreword expressing the views of the Defendants, an introduction providing an overview of the planning and oversight processes, and a "Recommendations" section with 50 specific recommendations drawn from the Needs Assessment. "Recommendation 1," for instance, states: "Parents of children with serious emotional disturbances and children old enough to participate must be part of all system planning, decision-making, management, training, and evaluation." Each recommendation includes three subsections, some quite lengthy but most measuring only a paragraph or two, headed "Background/Framework for Implementation," "Priority Action Items and Timelines," and "Desired Results." In all, the Implementation Plan contains 252 Action Items.

The district court required the Defendants to file regular status reports "documenting their compliance with deadlines, addressing any non-compliance, and listing the measures they are taking to bring any areas of non-compliance into compliance as quickly as possible." In May 2002, the parties filed a joint report to apprise the court of "the progress of the Implementation Plan" and to "provide an overview of the recommendations by category." In January 2003, the court directed the parties to create a matrix identifying those Action Items with which the Defendants had complied and those Action Items with which the Defendants, according to the Plaintiffs, had not complied.[3]

Matrix in hand, the district court scheduled a "final compliance hearing" for September 2006. In preparation for the hearing, the court ordered the parties to file a joint stipulation of undisputed facts, categorizing the facts by Action Item. The parties complied and, following consideration of the stip-

---

[3]The matrix numbered the action items according to the Recommendations in the Implementation Plan to which the Action Items applied. For example, the first Action Item under Recommendation 1 was Action Item 1A; the second under Recommendation 1 was Action Item 1B, etc.

ulation, the briefs, and a bench trial of the disputed facts, the court issued its Findings of Fact and Conclusions of law addressing the issues Action Item by Action Item.

The court determined that the Plaintiffs had failed to sustain their burden of proof or that the Defendants had substantially complied with the majority of Action Items. With respect to 21 of the Action Items, however, the court held that the Plaintiffs had "show[n] by clear and convincing evidence that [the Defendants substantially] violated the consent judgment . . . , and that the violation was not based on good faith and reasonable interpretation of the judgment." The court ordered the Idaho Department of Health and Welfare (the "DHW") "to take all steps necessary to substantially comply with [the 21] Action Items . . . within 120 days," adding that "[o]nce the defendants are in compliance with these Action Items, the defendants may file a motion to vacate the consent decrees."

In June 2007, the DHW filed affidavits of further compliance with the district court and, together with the Idaho Department of Juvenile Corrections, moved to vacate the consent decrees. The court found that the Defendants had substantially complied with all the Action Items, and vacated the consent decrees. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## STANDARDS OF REVIEW

We review de novo, as a question of law, the district court's interpretation of a consent decree. *See Keith v. Volpe*, 784 F.2d 1457, 1461 (9th Cir. 1986). However, we must "give deference to the district court's interpretation based on the court's extensive oversight of the decree from the commencement of the litigation to the current appeal." *Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of S.F.*, 934 F.2d 1092, 1094 (9th Cir. 1991). We likewise "must defer to the district court's factual findings underlying the interpretation

unless they are clearly erroneous." *Labor/Cmty. Strategy Ctr. v. Los Angeles County Metro. Transp. Auth.*, 263 F.3d 1041, 1048 (9th Cir. 2001). We review for an abuse of discretion the court's decision to vacate the consent decrees. *See Jeff D. IV*, 365 F.3d at 850. "A district court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004).

## DISCUSSION

We wish to make clear at the outset that we recognize and appreciate that the district judge has expended a great deal of time and effort wrestling with the attempted enforcement of these consent decrees for at least the last thirteen years, and has issued orders that helped to move the State towards the achievement of the agreed goals. We conclude, however, for the reasons that follow, that it was error for the district court to vacate the consent decrees, and we accordingly reverse the order of vacatur.

## I. Standard for Determining Compliance to Permit Vacatur of Consent Decrees.

[1] The Defendants moved for vacatur of the consent decrees under Federal Rule of Civil Procedure 60(b)(5), which permits a party to be relieved from a final judgment when "the judgment has been satisfied, released or discharged." The Defendants bear the burden of proving that they have met the Rule's requirements: in this case, that they have satisfied the judgment.[4] *See Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992); *Jeff D. IV*, 365 F.3d at 851.

---

[4] Rule 60(b)(5) also permits vacatur of a decree when "applying it prospectively is no longer equitable," but the Defendants' motion and the district court's order were clearly based on the conclusion that the judgment had been satisfied by compliance.

**[2]** The parties do not dispute that the relevant standard is "substantial compliance" with the requirements of the consent decrees. Because consent decrees have "many of the attributes of ordinary contracts [and] . . . should be construed basically as contracts," *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236 (1975), the doctrine of substantial compliance, or substantial performance, may be employed. *See Joseph A. v. New Mexico Dept. of Human Servs.*, 69 F.3d 1081, 1086 (10th Cir. 1995); *see also Ujdur v. Thompson*, 878 P.2d 180, 183 (Idaho Ct. App. 1994) ("[T]he doctrine of substantial performance . . . is not necessarily limited to [any particular] context and may apply to any contract."). The construction and enforcement of the consent decrees, where the parties are residents of Idaho and the underlying agreements were entered in that state, is governed by the contract law of Idaho as well as familiar contract principles. *See Jeff D. III*, 899 F.2d at 759-60 (applying Idaho law).

**[3]** "The phrase 'substantial compliance' is not susceptible of a mathematically precise definition." *Joseph A.*, 69 F.3d at 1085. We have explained that substantial compliance "does imply something less than a strict and literal compliance with the contract provisions but fundamentally it means that the deviation is unintentional and so minor or trivial as not 'substantially to defeat the object which the parties intend to accomplish.' " *Wells Benz, Inc. v. United States*, 333 F.2d 89, 92 (9th Cir. 1964) (quoting *Connell v. Higgins*, 150 P. 769, 775 (Cal. 1915)). Under Idaho law, substantial compliance is compliance "which, despite deviation or omission, provides the important and essential benefits of the contract." *Ujdur*, 878 P.2d at 183.

**[4]** Thus, it was the burden of the Defendants to establish that they had substantially complied with the requirements of the consent decrees, and that any deviation from literal compliance did not defeat the essential purposes of the decrees. We conclude that this burden was not placed on the Defendants in the district court's final compliance proceeding.

## II.  The Compliance Hearing

Although the district court held what it described as a "compliance hearing" in September 2006 to determine whether the defendants were in compliance with the consent decrees, the court clearly considered the operative issue to be whether the Defendants were in contempt of the consent decrees. Thus, at the outset of the bench trial, the district court stated:

> I want to take a minute and make sure that we're all on the same page as far as the standard which the Court must apply here, because I think that is very critical. This case —well, first of all, let me indicate that civil contempt, which I think is really the only remedy that the court can consider here. I don't know that I can award damages per se. But civil contempt consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply. The party should not be held in contempt if its actions appear to be based on a good faith and reasonable interpretation of the Court's order, and the party alleging civil contempt must demonstrate that the alleged contemnor violated the Court's order by clear and convincing evidence. . . . Thus, as discussed above, the only issues are, has the plaintiff's [sic] shown by clear and convincing evidence that the defendants have not substantially complied with their obligations under the consent decree.

In its Findings and Conclusions, the district court further explained: "In determining whether a party has complied with a consent decree, the Court must consider what enforcement mechanisms are available. Obviously, the only real sanction available to the Court is to find that a party is in contempt for failing to comply with the consent decree."[5] The district court

---

[5]We do not agree with the district court's implicit conclusion that a consent decree cannot be maintained in force if no party is in contempt. *See*

then resolved to "evaluate the evidence presented to determine whether the defendants violated the Action Items" using the civil contempt standard.

[5] It is clear from the above statements of the district court that all of its findings with regard to the Action Items were subject to the evidentiary burden and standard of proof for establishing civil contempt. Rather than requiring the *Defendants* to demonstrate substantial compliance by a preponderance of the evidence, the court required the *Plaintiffs* to show by clear and convincing evidence that, first, the Defendants had "violated the Action Items beyond substantial compliance" and, second, "that the violation was not based on good faith and reasonable interpretation of the judgment." That standard was reiterated many times by the district court in its findings. The district court never stated that the Defendants bore or had sustained the burden of showing substantial compliance. Thus, whether the district court's findings were phrased as failures of the Plaintiffs to sustain their burden of proof, or as statements that the Defendants had substantially complied, the findings were all the products of the civil contempt burden and standard of proof.

[6] The district court's allocation of the burden and standard of proof would have been appropriate if the only issue had been whether the Defendants should be held in contempt.[6]

*Gates v. Gomez*, 60 F.3d 525, 532 (9th Cir. 1995) ("[A] specific finding of a past violation is not prerequisite to an injunction preventing a future violation."). A decree may properly be kept in force to ensure that the defendants will continue to comply, especially when there has been a history of non-compliance. *See Freeman v. Pitts*, 503 U.S. 467, 491 (1992) (stating that a court considering termination of a consent decree "should give particular attention to [the defendant's] record of compliance."). The court also is not entirely limited to contempt as a means of enforcement. *See Hutto v. Finney*, 437 U.S. 678, 691 & n.17(1978) (stating that attorney's fees may be awarded as part of court's enforcement powers against a party that disregarded a court's order).

[6]The Plaintiffs sought enforcement of the consent decrees, but had not specifically asked for a finding of contempt.

But that framework was not appropriate for determining whether the Defendants had sufficiently complied with the consent decrees so that they were entitled to have the decrees vacated.

The adherence of the district court to the burden and standard of proof for civil contempt is illustrated by the fact that, with regard to Action Items Nos. 12B, 13A, 21C, 23B, 27F, 29G, 31F, and 31L, the *only* finding was that the Plainfiffs had failed to sustain their "clear and convincing" burden of proof. With regard to Action Items 2B, 18C, 26D, 26G, 28B, 28F, 29K, 32D, and 32E, the court referred to evidence in the record, but ruled only that the Plaintiffs had failed to meet their burden of proof, without a finding that the Defendants had substantially complied. Yet the effect of these rulings was to consider the Defendants to have substantially complied with all of those Action Items for the purposes of determining whether the consent decrees should be vacated.

Some of these findings that the Plaintiffs had not sustained their burden of proof were based on the court's requirement, understandable enough for purposes of determining whether some of the Defendants were in contempt, that the Action Item place a burden of action on an individual Defendant. The result was that if an Action Item required something to occur but failed to specify the individual responsible for initiating or following through on the action, the district court typically held that the plaintiffs did not identify "any specific and definite requirements" with which the individual defendants failed to comply. Again, that approach may be appropriate for a finding that no one is in contempt, but it does not answer the question whether an action item that contemplated a step to be taken collectively by the Defendants had been substantially performed. With regard to the above-listed Action Items, that question simply has not been answered.

This deficiency is particularly apparent when the Action Item contemplates activity by the Idaho Children's Council on

Mental Health ("ICCMH"), a coordinating council that was established by the Governor in accordance with a recommendation of the independent Needs Assessment. The membership of the ICCMH included the Governor and representatives from several state agencies, including the DHW and the DJC. The district court stated at the outset of its February 7, 2007, Findings and Conclusions:

> [W]hen determining whether a defendant is in compliance with an Action Item that requires action on the part of ICCMH, the Court will consider whether, and to what extent, Plaintiffs have shown by clear and convincing evidence that an individual defendant has a specific duty to act. If a defendant failed to do its part as a member of the ICCMH, the Court will hold that defendant in contempt. However, a general assertion that the ICCMH failed to fulfill an Action Item is not sufficient to find an individual defendant in contempt.

Again, this approach is quite appropriate for ruling which individuals, if any, are in contempt. But it does not address the issue whether, when the ICCMH has failed to act as required by an Action Item, the Defendants (i.e., the Governor or the DHW or, to a more limited extent, the DJC) have failed to achieve the agreed action required by the consent decrees before those decrees may be vacated. For example, the court set out Action Item 30G and its finding as follows:

> **30G: The ICCMH will use this information [day treatment data and standards] to develop recommendations for the Governor's consideration in developing his budget decisions.**
>
> DHW tracks the utilization of the day treatment which is included in the Community Report. (Tr., p. 1629). Plaintiffs failed to present clear and convincing evidence that the defendants failed to comply

with any specific and definite requirements of the defendants related to this Action Item, and therefore Plaintiffs failed to meet their burden of proof. Moreover, to the extent DHW had requirements under the Action Item, DHW substantially complied with those requirements.

It is noteworthy that this finding does not indicate that ICCMH or anyone else used the day treatment data and standards to develop recommendations for the Governor's consideration in developing his budget decisions, or that the Governor considered any such recommendations. Yet the parties to these consent decrees agreed that carefully developed recommendations for the Governor were needed to accomplish the purposes of the decrees. It may be that DHW's responsibility for any failures on the part of ICCMH was insufficiently spelled out to permit holding individuals or DHW in contempt. But the Item is set forth with sufficient specificity to indicate that data-based recommendations concerning day treatment are a requirement for substantial compliance with the decree.

It is true that the Action Items were sometimes vague in setting out exactly who was to do what. An example is Action Item 4M, which was treated as follows in the district court's 2007 Findings and Conclusions:

> **4M: Clarification of the Role of Regional and Local councils to provide information to their communities.**
>
> ICCMH approved a communication strategy and DHW developed a "social marketing plan" and numerous multimedia methods to use as outreach tools. (Tr., p. 1484). However, this does not necessarily clarify the role of the Regional and Local councils. Plaintiffs failed to present clear and convincing evidence that the defendants failed to com-

ply with any specific and definite requirements of the defendants related to this Action Item, and therefore Plaintiffs failed to meet their burden of proof. Moreover, to the extent DHW had requirements under the Action Item, DHW substantially complied with those requirements.

Here again, it is important to differentiate between the question whether anyone is to be held in contempt and the question whether there has been substantial compliance with the consent decrees. The Action Item well may be too vague in imposing duties to permit contempt sanctions to be imposed on individuals. *See Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 465 (9th Cir. 1989). But the parties to the consent decrees agreed to the "clarification" called for by the Action Item. In reaching such an agreement, the parties clearly contemplated action by some person or entity. It is most reasonable to conclude that the burden is on the state Defendants; it certainly could not be upon the Plaintiffs, who are not part of the Idaho government. The court's finding wholly absolves DHW of any responsibility for achieving the result commanded by Action Item 4M, and results in a finding of substantial compliance when the action required by the Action Item has not come to pass (at least so far as any finding shows).

The Plaintiffs have made extended arguments that several of the district court's findings were clearly erroneous, particularly those dealing with funding of community-based services. We decline to review these findings because they were made under an incorrect burden and standard of proof, as we have already explained. We have no way of determining whether and how these findings would change when the evidence is assessed by the district court with the burden of proof by a preponderance of the evidence placed on the Defendants to show substantial compliance with the Action Items. As explained in the next section, the status of funding, when found by the district court under the proper burden and stan-

dard of proof, will enter the determination whether the purposes of the consent decrees have been satisfied to the degree that permits vacatur of the decrees.

[7] In sum, then, we conclude that the employment of the contempt burden and standard of proof was improper for a determination of substantial compliance that permits the consent decrees to be vacated, and that it had sufficiently prejudicial effects on the findings and conclusions of the district court so that its order vacating the decrees must be reversed.

## III.    The Action Items as the Sole Measure of Substantial Compliance.

[8] The Plaintiffs strongly object to the district court's resort to only the Action Items in determining whether there had been substantial compliance with the consent decrees that justified their vacatur. In its Findings and Conclusions leading to the order vacating the consent decrees, the district court confined its rulings to the Action Items and said nothing of the overall objectives of the decrees. We agree with the Plaintiffs that the Action Items, while clearly relevant, are not the only matters to be considered in determining whether the consent decrees have served their purpose. The status of compliance in light of the governing standards require overall attention to whether the larger purposes of the decrees have been served. Indeed, this requirement is inherent in the very nature of "substantial compliance." "[T]he touchstone of the substantial compliance inquiry is whether Defendants frustrated the purpose of the consent decree — i.e., its essential requirements." *Joseph A.*, 69 F.3d at 1086. "Thus, there can be no 'substantial performance' where the part unperformed touches the fundamental purpose of the contract and defeats the object of the parties entering into the contract." *Ujder*, 878 P.2d at 183.

Even if the doctrine of substantial performance had not been employed, it would have been necessary for the district

court to focus on "whether there has been full and satisfactory compliance with the decree . . . and whether the [defendant] has demonstrated . . . its good-faith commitment to the whole of the court's decree and to those provisions of law and the Constitution that were the predicate for judicial intervention in the first instance." *Freeman v. Pitts*, 503 U.S. 467, 491 (1992). A court considering termination of a consent decree in light of performance of its specific terms "must also consider the more general goals of the decree which the terms were designed to accomplish." *Youngblood v. Dalzell*, 925 F.2d 954, 960 (6th Cir. 1991). "A court faced with a motion to terminate . . . a consent decree must begin by determining the basic purposes of the decree." *United States v. City of Miami*, 2 F.3d 1497, 1505 (11th Cir. 1993). Here, the decrees themselves set out their basic purposes, *see, e.g., Jeff D. III,* 899 F.2d at 760, and these purposes are also reflected in the recommendations of the independent Needs Assessment that found their way into the Implementation Plan.

For example, the single goal receiving the most emphasis in those documents was the need for more emphasis on community-based care and less on institutional care. *See Jeff D. IV*, 365 F.3d at 848. Whether sufficient progress has been made in that direction is certainly one of the factors to be considered in determining whether the consent decrees should be vacated. The resolution of the disputed question whether the Defendants have lived up to their obligations to request adequate funding and to redirect their existing funding to increase community-based services will clearly bear on this determination. Another factor to be considered is the Defendants' "record of compliance," *Freeman*, 503 U.S. at 491, which over course of the litigation has been far from exemplary. *See Jeff D. IV*, 365 F.3d at 847 ("The history of this case is a sad record of promises made and broken over two decades.").

**[9]** It is true, as the Defendants argue, that the district court clearly announced its intention to reach a final compliance determination that would permit the decrees to be vacated,

and it focused the efforts of the parties toward resolving the disputed issues over the Action Items. But the Plaintiffs made known their view that the decrees and the Implementation Plan's recommendations must be taken into account in determining whether the purposes of the consent decrees had been substantially served.

The Defendants argue that the Implementation Plan is too vague to consider in determining compliance, and its terms reflected that it was a work in progress that stated "Desired Results" rather than measurable goals. It is true that the decrees' statement of purposes and the Implementation Plan's recommendations are often too vague to serve as a foundation for a contempt sanction. That does not mean, however, that the district court can avoid considering them in its final determination whether the purposes of the decrees, and the Implementation Plan, had been adequately served. It may be that compliance with Action Items was all that was required for certain of the overall purposes of the decrees or the Implementation Plan, but that finding or conclusion has not been made. Before the consent decrees may be vacated, there must be careful attention to their purposes, along with consideration of the Action Items. If the purposes of the consent decrees and the Implementation Plan have not been adequately served, the decrees may not be vacated.

It is true that the district court recited the standard for vacating consent decrees set forth in *Rufo*, 502 U.S. at 393, and *Jeff D. IV*, 365 F.3d at 851, and opined that the "defendants have fulfilled their burden under *Rufo*, having made significant efforts to substantially comply with their promises." But the context of the district court's statement was clearly confined by the contempt-based findings of compliance with the Action Items. The fruit of the "significant efforts" found by the district court was compliance with the Action Items alone. Explicit consideration of the goals of the decrees and Implementation Plan, and whether those goals have been adequately served, must be part of the determination to vacate the

consent decrees. Because that consideration was lacking and because, as we have already discussed, the contempt standard and burden of proof was used in determining to vacate the decrees, we reverse the order vacating the decrees.

## IV.   The Protective Orders

The Plaintiffs contend that the district court abused its discretion by issuing protective orders barring them from taking supplemental depositions of non-party Brad Foltman and Appellee Karl Kurtz.

**[10]** "[A] district court has wide discretion in controlling discovery." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). The court in this case carefully reviewed the depositions of both Foltman and Appellee Kurtz, and concluded that the additional information sought—budget requests, the content of deliberations within the executive office, the content of conversations between the Governor and his subordinates, opinions rendered by legislative advisors—was both "predecisional" and "deliberative in nature" and therefore protected from disclosure. Those conclusions were supported by the record. The court also made specific findings as to whether either the competing-interests exception, *see FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984), or the waiver exception, *see Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 298 (D. Md. 1992), applied, and concluded that they did not. We find no error in those rulings. Accordingly, the district court did not abuse its discretion in upholding Foltman's and Kurtz's assertion of the deliberative process privilege and in issuing protective orders.

**[11]** The Plaintiffs further contend that the district court "improperly applied the analysis for the legislative privilege" to non-party Kathy Holland-Smith, a legislative budget analyst. The protections of the privilege extend, however, not only to legislators but to legislative aides and assistants, "the day-to-day work of [whom] is so critical to [a legislator's]

performance that they must be treated as the latter's alter egos." *Gravel v. United States*, 408 U.S. 606, 616-17 (1972); *see also Marylanders*, 144 F.R.D. at 298 ("It is the *function* of the government official that determines whether or not he is entitled to legislative immunity, not his title."). The factual findings of the court with respect to Holland-Smith's activities as a budget analyst amply support the conclusion that she was entitled to the legislative privilege by reason of her function in the legislature. Accordingly, the district court did not err in upholding Holland-Smith's assertion of legislative privilege.

## CONCLUSION

For the foregoing reasons, we reverse the order of the district court vacating the consent decrees; affirm the order of the district court issuing protective orders with respect to Appellee Kurtz, non-party Foltman, and non-party Holland-Smith; and remand for further proceedings consistent with this opinion. The Plaintiffs are entitled to their costs on appeal.

**REVERSED IN PART; AFFIRMED IN PART; REMANDED.**