**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

TROAS V. BARNETT,
*Plaintiff-Appellant*,

v.

DAVID NORMAN; A. CASTRO; TRACY
JACKSON; A. FOUCH; J.
PRUDHOMME; D. FULKS; JASON
BARBA; K. CURTISS; MICHAEL
PALLARES; K. LENNON; MARTIN
GAMBOA; ANGEL DURAN; DIMAS
MANUEL TORRES BARRAZA;
MANUEL TORRES,
*Defendants-Appellees*.

No. 13-15234

D.C. No.
1:05-cv-01022-
BAM

OPINION

Appeal from the United States District Court
for the Eastern District of California
Barbara McAuliffe, Magistrate Judge, Presiding

Argued and Submitted
March 9, 2015—San Francisco, California

Filed March 31, 2015

Before: Marsha S. Berzon, Jay S. Bybee,
and John B. Owens, Circuit Judges.

Opinion by Judge Owens

# SUMMARY[*]

## Civil Rights

The panel reversed the district court's judgment and remanded for a new trial in an action brought by state prisoner Troas Barnett pursuant to 42 U.S.C. § 1983, alleging excessive force by prison guards.

Barnett asserted that the district court abused its discretion by permitting three prisoner-witnesses to refuse to answer his questions because, according to the prisoner-witnesses, they had "nothing to add to this matter," chose "not to be a party to" the trial, or were simply unwilling to testify. The panel held that the district court abused its discretion by disclaiming any authority to compel the prisoner-witnesses to answer Barnett's questions. The panel held that where a "necessary and material" witness refuses to testify and no constitutional, statutory, or common-law rule bars the testimony, a judge must try to encourage the testimony or at least explain on the record why, in her discretion, she did nothing because, for instance, such efforts would have been futile. In this case, the magistrate judge abused her discretion as a matter of law when she permitted the prisoners to opt out of testifying. The panel further held that given these facts, it could not say that it was "more probable than not" that the jury was unaffected by the error, and therefore the error was not harmless.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Ian Samuel (argued) Jones Day, New York, New York, for Plaintiff-Appellant.

Janine K. Jeffery (argued) Reily & Jeffery, Inc. Northridge, California, for Defendants-Appellees.

---

**OPINION**

OWENS, Circuit Judge:

Prisoner Troas Barnett appeals a jury verdict that rejected his pro se § 1983 claims of excessive force by prison guards. On appeal and now with assistance of counsel, Barnett contends that the trial court abused its discretion by permitting three prisoner-witnesses to refuse to answer his questions because, according to the prisoner-witnesses, they had "nothing to add to this matter," chose "not to be a party to" the trial, or were simply unwilling to testify.

While there are exceptions to the maxim "the public has a right to every man's evidence," witness abstention is not one of them. The district court abused its discretion by disclaiming any authority to compel the prisoner-witnesses to answer Barnett's questions. We reverse the judgment and remand for a new trial.

## I. FACTS

### A. The Fight and Pretrial Litigation

On November 4, 2003, Barnett and two prison guards fought violently in his cell. Barnett says that the guards attacked him with a flashlight and a baton without provocation and followed up with pepper spray and more baton strikes after his submission. The guards say that Barnett initiated the attack on one guard and the other came to his colleague's aid, and that both guards were injured. The parties agree that Barnett suffered physical injuries.

Barnett sued the two guards under 42 U.S.C. § 1983 for malicious and sadistic use of force in violation of the Eighth Amendment, and a third guard for failing to protect Barnett by timely intervening. The parties consented to trying the case before a magistrate judge.

A key issue was whether Barnett could secure the attendance of witnesses for trial. Barnett filed motions for the production of prisoners Phillip Conti, Darrell King, and Sven Johnson to testify on his behalf. He stated that while the three would not testify voluntarily, they would provide evidence supporting his version of events if compelled. The guards opposed these efforts and suggested the witnesses testify by video or telephone, as transporting the dangerous prisoners, all serving lengthy sentences for violent crimes, required significant law enforcement supervision and resources. The magistrate judge granted Barnett's motions.[1]

---

[1] The magistrate judge initially denied Barnett's motion as to Johnson, concluding that his testimony would be cumulative. Barnett objected to the denial, arguing that Johnson could offer non-cumulative testimony,

In writs of habeas corpus ad testificandum, the judge identified each inmate as a "necessary and material witness" and ordered their production for trial. Shortly after the judge's order, King filed a request to quash the writ and a supporting declaration stating that he did not see the officers "apply any force to Barnett," he could not "provide any relevant information," and he did not "wish to attend trial."

## B. The Trial

In his opening statement, Barnett promised the jury that it would hear from the three prisoners who witnessed the incident. Barnett first called his former cellmate Johnson to the stand. As his opening question and in front of the jury, Barnett asked Johnson if he recalled being Barnett's cellmate. The following exchange ensued:

| | |
|---|---|
| Johnson: | Your Honor, I asked not to be brought here. I have nothing to add to this matter. |
| Court: | All right. If you don't recall, then you can just say that. |
| Barnett: | On November 4, 2003, were you incarcerated at the California Substance Abuse Treatment Facility? |
| Johnson: | I have nothing to add to this matter. |

and the magistrate judge, upon reconsideration, ordered Johnson's presence.

| | |
|---|---|
| Barnett: | Your honor, I can scarcely see how I'm going to ask him with regard to relevant testimony, Your Honor, to what transpired, Your Honor, if he refuses to answer any questions. |
| Court: | I can't compel him to answer if he's not going to answer. |
| Barnett: | Are you not going to answer any questions that I ask you? Was that – |
| Johnson: | None. |
| Barnett: | – your statement for the record? |
| Johnson: | None. |
| Court: | All right. |
| Barnett: | I'd like to thank and excuse the witness then, Your Honor, because, I mean, I can't force him to answer questions here. |

Openly speculating that someone had threatened Johnson, Barnett asked his former cellmate if that were the case. Rather than answer that question, Johnson continued to state that he had "nothing to add to this matter." The trial judge then asked the witness directly, "Do you want to answer that question?" When the witness said "No," the court stated, "I don't know what to say," and Johnson was excused.

Barnett next called King. Outside the presence of the jury (and not under oath), King refused to answer any of Barnett's questions. King explained that although he had not been threatened, he chose "not to be a party to this proceeding." After Barnett said that he did not "know what to do," the court responded that it could not "compel [King] to state anything." Barnett then asked the court, "if all these witnesses are going to come in here and say the same thing, Your Honor, what was the purpose of bringing them here to the Court in the first place?" The trial judge stated that King:

> didn't feel like he was being threatened, he just didn't want to have anything to do with this. So there's not much I can do. I can't compel him to testify as to facts that he won't testify to.

After King confirmed that he would not "answer a single question with regard to the incident," he was excused.

Barnett's final witness was Conti. When Barnett asked if Conti was "willing to offer testimony" about the altercation, Conti replied "No." Barnett then told the trial court, "Well, I can't do nothing but thank and excuse the witness, Your Honor, because they're all coming in here and saying the same thing." The court did not disagree, and excused Conti. Without hearing any testimony about the fight from the three promised witnesses, the jury returned a verdict in favor of the guards.

## II. STANDARD OF REVIEW

A district court abuses its discretion when it does not apply the correct law, *Jeff D. v. Otter*, 643 F.3d 278, 283 (9th

Cir. 2011), or erroneously interprets the law, *United States v. Beltran-Gutierrez*, 19 F.3d 1287, 1289 (9th Cir. 1994).[2] Evidentiary error will not result in reversal absent prejudice. *See Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir. 2001).

## III. DISCUSSION

Both sides in a trial have the right to call witnesses, and the power to compel witness testimony is essential to our system of justice. *See Blair v. United States*, 250 U.S. 273, 281–82 (1919) ("[T]he giving of testimony and the attendance upon court or grand jury in order to testify are public duties . . . necessary to the administration of justice . . . ."). No one, not even the President of the United States, can automatically avoid testifying in a deposition, before a grand jury, or in a courtroom. *See Clinton v. Jones*, 520 U.S. 681, 704–05 (1997); *United States v. Fromme*, 405 F. Supp. 578, 582–83 (E.D. Cal. 1975). And while there are important exceptions to this fundamental rule—including the Fifth

---

[2] Defendants contend that we should review for plain error; they argue that Barnett failed to preserve the issue for appeal because he did not file a motion or expressly request that the district court compel each witness's testimony. In light of the leniency due to pro se litigants, *Christensen v. Comm'r*, 786 F.2d 1382, 1384–85 (9th Cir. 1986), Barnett's multiple attempts to get the court's help during his examinations, and the magistrate judge's responses to his complaints—showing she heard his protests and had an opportunity to rule on the issue—we conclude Barnett put the judge and defendants on notice. *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) ("No 'bright line' exists to determine whether an issue has been properly raised below, but 'a workable standard is that the issue must be raised sufficiently for the trial court to rule on it.'" (quoting *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992))). Because Barnett sufficiently preserved his claim, we review for abuse of discretion.

Amendment, spousal privilege, and attorney-client privilege—"these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974); *see also Trammel v. United States*, 445 U.S. 40, 50–51 (1980).

This is not to say that there is an absolute right to call any witness—within constitutional and statutory limits, trial judges have discretion on the presentation of witness testimony, including decisions regarding the competency of a person to testify, the number of witnesses a party may call, and the allowable purposes of the testimony. *See Geders v. United States*, 425 U.S. 80, 86–87 (1976) (trial judges have broad power to determine "the order in which parties will adduce proof; . . . [they] may control the scope of rebuttal testimony, may refuse to allow cumulative, repetitive, or irrelevant testimony, and may control the scope of examination of witnesses" (citations omitted)); *see also* Fed. R. Evid. 403 (power to exclude testimony for prejudice, confusion, or waste of time); Fed. R. Evid. 602 (power to exclude testimony for witness's lack of personal knowledge); Fed. R. Evid. 611 (power to exercise reasonable control over mode and order of examining witnesses and to protect witnesses from harassment or undue embarrassment); Fed. R. Evid. 614 (power to call and examine witnesses).

But what a judge cannot do is to allow a witness to refuse to testify because he would prefer not to answer a question. The public's interest in full disclosure and the fair administration of justice overrides concerns that testimony might be inconvenient, burdensome, or harmful to a witness's social or economic status. *United States v. Calandra*, 414 U.S. 338, 345 (1974). Moreover, a "subpoena has never

been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase." *United States v. Bryan*, 339 U.S. 323, 331 (1950). Witnesses cannot refuse to answer questions merely because they choose not to—there is no opt-out box on a subpoena. To hold otherwise would make "the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures," a nullity. *Id*. Thus, a trial judge faced with uncooperative witnesses cannot endorse recalcitrance by saying, "there's not much I can do," "I can't compel him to answer if he's not going to answer," and "I don't know what to say."

There is plenty that a judge can do to encourage a witness's testimony. She can direct the witness to answer the question and tell him about the consequences of not doing so. *See, e.g.*, *United States v. Doe*, 125 F.3d 1249, 1252 (9th Cir. 1997); *United States v. Powers*, 629 F.2d 619, 621–22 (9th Cir. 1980). She can ask the questions herself. Fed. R. Evid. 614(b); *see also, e.g.*, *United States v. Flores*, 628 F.2d 521, 524 & n.3 (9th Cir. 1980). She can take a recess and inquire outside the presence of the jury whether something is impeding truthful testimony. *See, e.g.*, *Kronick v. United States*, 343 F.2d 436, 439 (9th Cir. 1965); *Flores*, 628 F.2d at 524–25; *see also Harris v. United States*, 382 U.S. 162, 166 (1965) ("What appears to be a brazen refusal to cooperate with the grand jury may indeed be a case of frightened silence. Refusal to answer may be due to fear—fear of reprisals on the witness or his family. Other extenuating circumstances may be present.").

These are not rarely used tools—they come into play daily in depositions, grand juries, and courts around the country. If a judge is unable to scale a witness's wall of

silence with these tried-and-true methods, she has a sledgehammer at her disposal—the contempt statutes—to break through to answers. *See* 18 U.S.C. §§ 401, 402; 28 U.S.C. §§ 636(e), 1826; Fed. R. Crim. P. 42; *United States v. Wilson*, 421 U.S. 309, 316, 319 (1975) ("In an ongoing trial, with the judge, jurors, counsel, and witnesses all waiting," a witness's "contumacious silence, after . . . an explicit, unambiguous order to testify, impede[s] the due course of . . . trial" and can warrant summary contempt sanctions); *Powers*, 629 F.2d at 624 ("The inherent power of the courts to punish contempt of their authority and to coerce compliance with orders is not disputed."); *In re Grand Jury Proceedings, Ortloff*, 708 F.2d 1455, 1457 (9th Cir. 1983) (affirming criminal contempt conviction, where prisoner-witness "claimed to have no knowledge of the matters in question" and the judge described the consequences of failing to testify, informed him he had no choice but testify, told him if he could not answer a question because of lack of knowledge he should say so in his testimony, and, ultimately, held him in contempt when he still refused to testify); *Dupuy v. United States*, 518 F.2d 1295, 1295 (9th Cir. 1975) (per curiam) (affirming civil contempt sanction imposed on a prisoner who refused to answer questions during grand jury proceedings because of fear for his life, holding that "fear of physical harm does not excuse a witness from testifying").

Understandably, defendants do not challenge the court's clear power to encourage truthful answers to fair questions. Rather, they insist that such judicial efforts would have been futile, as harsh questioning from the judge or threats of contempt would never have compelled these hardened criminals to answer Barnett's questions. We agree that efforts to compel testimony will sometimes prove fruitless. *See In re Garmon*, 572 F.2d 1373, 1374 (9th Cir. 1978)

(where incarcerated witnesses continued to refuse to testify, court suspended their sentences and held them in civil contempt); *United States v. Weinberg*, 439 F.2d 743, 745 (9th Cir. 1971) (witnesses still refused to testify after court granted them immunity and ordered them to answer questions). But perhaps such efforts could have worked with at least one of the witnesses.

Whether to employ a particular incentive or sanction to encourage testimony rests within the district court's sound discretion. *See SEC v. Elmas Trading Corp.*, 824 F.2d 732, 733 (9th Cir. 1987). We do not presume to prescribe specific procedures a district court must follow when faced with a recalcitrant witness. "There are no inflexible rules to guide the court's discretion." *United States v. Panza*, 612 F.2d 432, 439 (9th Cir. 1979). "The propriety of a given sanction will vary with the circumstances," and we leave it to the trial judge to exercise that discretion in light of the specific facts of a case. *Id.* Under certain circumstances—perhaps the witness's testimony is cumulative or on an ancillary issue, and sanctions are unlikely to overcome his or her reluctance to speak—the appropriate course of action may well be to do nothing.

But before we can validate that discretionary determination, the trial court must actually *exercise* its discretion. *See Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002). Where a "necessary and material" witness refuses to testify and no constitutional, statutory, or common-law rule bars the testimony, a judge must try to encourage the testimony or at least explain on the record why, in her discretion, she did nothing because, for instance, such efforts would have been futile. Here, the magistrate judge abused

her discretion as a matter of law when she permitted the prisoners to opt out of testifying.

This error was not harmless. As Barnett contends, "[e]verything in this case turned on which version of events was believed." Barnett's anticipated case-in-chief comprised only three eyewitness accounts and his own testimony. Allowing the witnesses to opt out denied Barnett the chance to corroborate his story. This was especially damaging, as Barnett had promised the jurors that the prisoners' testimony would support his version of events—the jury would need not rely solely on his word. *See United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir. 1997) (erroneous exclusion of evidence more probably than not affected the verdict when it "deprived Morales of the only corroborating evidence she had"). The fact-intensive nature of Barnett's claim made eyewitness testimony all the more critical. *See United States v. Hobbs*, 31 F.3d 918, 923 (9th Cir. 1994) (the right to have a witness is even more substantial where parties present "conflicting, mutually-exclusive stories"). And while it is possible that the prisoners would have steadfastly refused to say anything even after the judge nudged, cajoled, and/or threatened them, it is more likely that at least one of the three, facing a federal judge and additional sanctions, would have agreed to answer at least some of the questions.

Finally, we recognize that the witnesses might indeed have seen or heard nothing relevant, although were that the case it seems they would have simply said so. It is also possible that whatever testimony they might have offered would have corroborated the defendants' version of events. We cannot know, because the magistrate judge did not try to encourage their testimony.

Given these facts, we cannot say it was "more probable than not" that the jury was unaffected by the error. *See Obrey v. Johnson*, 400 F.3d 691, 701–02 (9th Cir. 2005) (prejudice occurs when erroneously excluded evidence was "not merely tangential or cumulative" but "directly probative of the central issues in dispute").

## IV. CONCLUSION

Few witnesses want to testify, and if given the choice, almost none would. Answering embarrassing questions or reliving a traumatic event is a miserable experience, and people surely have better things to do with their time. But much like jury service, witness testimony is not optional in our justice system—it is essential.

When confronted with witnesses who refuse to testify simply because they choose not to, a judge has a wide array of tools—from the pillow of additional questions to the sledgehammer of contempt—to ensure that witnesses provide truthful testimony. Although use of these tools is within the judge's discretion, the magistrate judge here failed to exercise her discretion in any way, and instead stated that she was powerless. Because this error was not harmless, we reverse the judgment of the district court and remand this case for a new trial.[3]

**REVERSED and REMANDED**.

---

[3] In light of the issues in this case, the district court should carefully consider appointing counsel for Barnett in future proceedings.