NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FEB 11 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

WILLIAM LESSIN, on behalf of himself
and all others similarly situated; CAROL
SMALLEY; PATRICK POWERS; SHERI
POWERS; LLOYD ATTERSON; BRAD
NIELSEN; DAVID APPEL; JOHN KIGIN;
SUSANNE HAMILTON; STEVE
SELGADO; ROGER SADDLER;
CAROLINE MCGEE; DAVID
HUFFSTETLER,

Plaintiffs - Appellees,

v.

FORD MOTOR COMPANY,

Defendant - Appellant.

No. 25-2211

D.C. No.
3:19-cv-01082-AJB-AHG

MEMORANDUM[*]

Appeal from the United States District Court
for the Southern District of California
Anthony J. Battaglia, District Judge, Presiding

Argued and Submitted December 8, 2025
Pasadena, California

Before: M. SMITH, CHRISTEN, and FORREST, Circuit Judges.

Defendant-Appellant Ford Motor Company ("Ford") appeals the district

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

court's class certification order, certifying a number of classes asserting state law claims.[1]  Plaintiffs-Appellees allege latent defects in Ford F-250 and Ford F-350 "Super Duty" trucks across four design platforms: the P131 (Model Year ("MY") 2005–2007), P356 (MY 2008–2010), P473 (MY 2011–2016), and P558 (MY 2017–2019) ("Class Vehicles").  Each class is limited to "[a]ll persons who purchased or leased a Class Vehicle from an authorized Ford dealership within the [respective states] primarily for personal, family, or household purposes."  The district court excluded the P356 and P473 platforms from the classes asserting what the parties refer to as the "fraud-based" claims.[2]

On appeal, Ford challenges whether Federal Rule of Civil Procedure 23(b)(3)'s predominance requirement is met for the various classes.  A class may be certified pursuant to Federal Rule 23(b)(3) if the court "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

---

[1] Ford moved for reconsideration of the district court's class certification order, which the district court granted in part only to correct a mistakenly certified class.
[2] In its order ruling on Ford's motion for reconsideration, the district court stated that it "denied the motion for class certification as to the P131 (MY 2005–2007) and P538 (MY 2017–2019) models, with only the P356 (MY 2008–2010) and P473 (MY 2011–2016) classes certified."  At oral argument, both parties agreed that this was a typographical error that swapped the two platforms excluded from certification for the fraud-based claims.

23(b)(3). We review orders granting class certification for abuse of discretion. *See Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1051 (9th Cir. 2015).

Because the parties are familiar with the facts of this case, we do not recount them here except as necessary to provide context for our ruling. We have jurisdiction pursuant to 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f). We affirm in part and reverse in part the class certification order, and remand for further proceedings consistent with this memorandum disposition.

1. Ford argues that the district court's summary judgment ruling conclusively establishes that Plaintiffs' claims depend on individualized evidence. We disagree. That certain claims could be resolved with individualized evidence at summary judgment does not necessarily mean that individual questions predominate Plaintiffs' claims as a whole. It also does not mean that a class action is not "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

2. Ford argues that certification of each class was an abuse of discretion because the record demonstrates that the alleged steering oscillation ("shimmy") manifested at different rates from year to year across the platforms encompassed by the certified classes. Plaintiffs counter that the alleged defect at issue is an "insufficient damping system," which was inherent to all Class Vehicles at the time

of sale and thus is common to them all.  We agree with Ford, and reverse and remand for further analysis.

The district court accepted Plaintiffs' argument that "the nature and existence of the Suspension Defect predominates over all other questions here" and that common evidence can "show the Suspension Defect is common to all Class Vehicles at the point of sale."  Drawing on *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010), the district court concluded that "the injury occurred at the point of sale—when a putative member drove her car off the lot—not when the vehicle experiences the Shimmy."  It rejected Ford's variable manifestation argument as "foreclose[d]," stating that "[w]here the injury alleged is a design defect, the Ninth Circuit has 'held that proof of the manifestation of a defect is not a prerequisite to class certification.'"

We disagree with the district court's reading of *Wolin*.  *Wolin* did not hold that manifestation evidence is never relevant at class certification.  Rather, we simply concluded that the plaintiffs' alleged "alignment geometry" defect in their Land Rovers was "susceptible to proof by generalized evidence" in all the class vehicles.  617 F.3d at 1173.  Reasoning that the defect was present at the time of sale, we explained that "proof of the manifestation of a defect is not a prerequisite to class certification." *Id.*

Like the plaintiffs in *Wolin*, Plaintiffs here maintain that the alleged insufficient damping system was present at the time of sale. But an important difference between *Wolin* and the instant case is the focus of the dispute. We read *Wolin* to take for granted that the alleged defect in steering alignment geometry was the same in all class vehicles. *See id.* at 1172 ("The claims of all prospective class members involve the same alleged defect, covered by the same warranty, and found in vehicles of the same make and model."), 1174. The parties there disputed whether the tire wear at issue was a manifestation of the alleged defect or due to "individual factors such as driving habits and weather." *Id.* at 1173. In other words, Land Rover disputed whether generalized evidence could prove that the class vehicles' alignment made them defective.[3] *See id.* ("[A]ccording to Land Rover, the district court correctly decided not to certify a class because appellants failed to prove that their tires wore prematurely *due to a defect*." (emphasis added)). On that issue, the question of manifestation went toward the merits and "d[id] not overlap with the predominance test." *See id.*

---

[3] We stated in dicta in *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979 (9th Cir. 2020), that "the existence of a defect was undisputed" in *Wolin* and *Wolin*'s focus was "whether the defect was common." *Id.* at 987 (citing *Wolin*, 617 F.3d at 1170–71). This description is in some tension with *Wolin*, which expressly states that "whether the LR3's alignment geometry was defective" was one of the common issues to be resolved on the merits. *Wolin*, 617 F.3d at 1172. We take *Grodzitsky* to mean that it was undisputed that the class vehicles' steering alignment geometry (the alleged common defect) manifested in premature tire wear in some vehicles. *See Wolin*, 617 F.3d at 1170–71.

Not so here, where the parties do dispute whether the alleged defect is identical across all Class Vehicles and, consequently, whether Plaintiffs can demonstrate the alleged defect with common evidence. Evidence of manifestation rates was not relevant in *Wolin* because the statewide classes involved only one platform (the Land Rover LR3) and limited model years (2004 to 2006). *See id.* at 1171. In contrast, most of the certified classes here span four platforms and model years from 2005 to 2019. Because the district court misread *Wolin*, which we do not interpret to stand for the broad, categorical assertion that manifestation evidence is never relevant at class certification, it abused its discretion by failing to evaluate shimmy manifestation rates across platforms in assessing predominance. *See Barnett v. Norman*, 782 F.3d 417, 421 (9th Cir. 2015). We reverse the certification order and remand for the district court to evaluate whether the variable evidence of shimmy manifestation is fatal to certification of the putative classes.

At oral argument, Ford stated that manifestation evidence is specifically relevant to Plaintiffs' claims for breach of implied warranty and Plaintiffs' fraud-based claims. Thus, the district court must examine the South Carolina class and contingent Maine class[4] to evaluate the impact of the proffered shimmy

---

[4] The district court determined that the Maine implied warranty claims could be resolved on a class-wide basis, but it granted summary judgment in favor of Ford on the named plaintiff's claim. Thus, it did not certify the Maine class, and the Maine class is contingent upon substitution of a new representative plaintiff.

manifestation evidence on predominance. In doing so, it should assess whether the manifestation evidence affects the putative Class Vehicles' merchantability under South Carolina and Maine law and, if so, whether that affects predominance. *See Wilson v. Style Crest Prods., Inc.*, 627 S.E.2d 733, 735–37 (S.C. 2006); *Jolovitz v. Alfa Romeo Distribs. of N. Am.*, 760 A.2d 625, 629 (Me. 2000).

Moreover, the district court should evaluate predominance with respect to the California, Colorado, Illinois, and New Mexico classes asserting fraud-based claims. This includes considering whether the shimmy manifestation evidence impacts whether the alleged defect was a material fact that Ford had a duty to disclose. The district court should also consider *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1235 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1051 (2025), in which we concluded that "proof of materiality 'is not a prerequisite to class certification'" because "the question [was] the same for every class member" given that "materiality is an objective inquiry." *Id.* (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013)). Whether the alleged defect's materiality varies across Class Vehicles is relevant when considering whether common questions predominate.

3. Ford challenges the certification of the Arizona, New Mexico, and Texas classes asserting express warranty claims, which require evidence that a

class member gave Ford multiple attempts to repair any defect.[5]  The district court agreed with Plaintiffs that common evidence can demonstrate multiple unsuccessful repair attempts, citing *In re MyFord Touch Consumer Litigation*, 2016 WL 7734558 (N.D. Cal. Sept. 14, 2016).  In *MyFord Touch*, the district court evaluated a similar argument and concluded that a fact finder could use Ford's warranty records to determine whether a consumer took his or her vehicle in for repairs and that such an inquiry did not defeat predominance.  *See id.* at *25.

Here, Ford argues that its warranty records of damping system replacements cannot establish that the repair was attributable to the alleged defect or that the repair was unsuccessful.  But Ford has not introduced any evidence that the shimmy manifests for any reason other than the alleged defect.  Nor does Ford explain why a vehicle would need the same repair multiple times if the previous repair was successful.  It was not an abuse of discretion to determine that Plaintiffs' express warranty claims may be proven with Ford's warranty records without individualized evidence overtaking the common questions.

4.     Ford argues the personal-use requirement included in the class definition and imposed by California consumer protection law—*i.e.,* that all class members must have obtained their vehicle for "primarily personal, family, or

---

[5] Plaintiffs do not dispute that they must show multiple repair attempts to establish a breach of Ford's express warranty.

household purposes"—calls for individualized proof and thus, the district court abused its discretion by finding predominance. We agree that individualized proof is likely required but disagree that the district court abused its discretion by finding predominance based on the record here.

The district court determined that "commercial purchasers (fleet and chassis-cab purchasers) can be excluded from the notice process using Ford's data, leaving only retail purchasers to receive notice and an opportunity to submit proof that their vehicle purchases were primarily for personal use." Quoting *MyFord Touch*, the district court further explained that class members who are not excluded by Ford's fleet codes "may be required to submit a copy of the vehicle title showing it was taken in a personal name; a record showing that the car is not registered as a commercial vehicle, and a declaration under oath or document showing that they did not take a business tax deduction on their vehicle." *See* 2016 WL 7734558, at *24.

Ford argues that a vehicle's title and registration cannot establish how the owner or lessee "actually uses" the vehicle. It asserts that up to 30 percent of non-fleet Super Duty trucks are purchased for small business use, which makes it difficult to determine which vehicles are purchased for primarily personal use because small business buyers tend to be "mixed use" operators. The presence of

some individualized issues is not dispositive. The district court did not abuse its discretion by relying on the reasoning articulated in *In re MyFord Touch*.

5. Ford argues that Plaintiffs' fraud-based claims require Plaintiffs to demonstrate Ford's pre-sale knowledge of a defect. We address this argument even though we reverse and remand for further evaluation related to the shimmy manifestation evidence.

The district court abused its discretion in determining that generalized proof could be used to demonstrate Ford's pre-sale knowledge of the alleged defect in all Class Vehicles. While evidence that predates both the P131 (MY 2005–2007) and P558 (MY 2017–2019) could be used to demonstrate Ford's knowledge that those platforms were defective, Plaintiffs could not use evidence that post-dates the P131 but predates the P558 to demonstrate that Ford knew that the earlier platform was defective. Logically, any evidence that post-dates the P131 platform concerns Ford's knowledge only with respect to the P558; this is not generalized, class-wide proof. Grouping the two platforms in one class may not cause problems if Ford knew about the alleged defect prior to the P131. But it may present a problem if Ford did not know about the alleged defect prior to the P131 because, as certified, Plaintiffs' claims for both platforms rise and fall together.

6. Last, Ford argues that many of the individual implied warranty and fraud-based claims, which accrue at the time of sale, will exceed the statute of

limitations periods of the applicable statutes. And it contends that these timeliness issues will require individualized inquiries because class members will seek to establish tolling for their claims. The district court concluded that predominance was not defeated because doctrines for tolling the statute of limitations may involve common proof. Although it may be possible that timeliness problems could defeat predominance in an appropriate case, we conclude that it was not an abuse of discretion for the district court to determine that tolling questions do not defeat predominance here.

With respect to tolling pursuant to the discovery rule, "the presence of individual issues of compliance with the statute of limitations . . . does not [necessarily] defeat the predominance of the common questions." *Cameron v. E. M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976). We have not addressed whether individual questions based on tolling for fraudulent concealment defeat predominance, but the district court did not abuse its discretion by concluding that Plaintiffs could offer common evidence of Ford's communications with truck owners and lessees.

**AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**